May it please the Court, Mr. Shea. I'm Dennis O'Brien. I represent the City of Springfield. This case, as noted by the dissenting Commissioner, is about causal connection. And as argued by the employee in his brief, it is also a, quote, battle of experts, end quote. Now, both Dr. Payne and Dr. DeGrange testified by deposition. You are in the exact same position to judge their testimony as the arbitrator of the commission. But we don't get to do that, do we? I know that. I'm not asking you to do this No, no, no. I'm just saying that they are, the arbitrator chose which one to believe. You have the same exact evidence in front of you. The arbitrator had nothing more than you. So it's just as easy, you know, you can judge their credibility and the weight to be given to their evidence with as well. The noble review? I know it. I'm not asking for a review, but I'm saying that you can see if it's against the manifest weight. By doing what? Based upon their testimony and the facts that they testified to. So you're talking about manifest weight under a different... Correct. I mean, excuse me, you're talking about... I'm not asking for a noble review. Well, you're saying we can look at the evidence deposition and we can make the same decision the arbitrator made because that's all they did. Well, you can see whether it's against the manifest weight and the arbitrator had no greater ability to judge that deposition than you do when you're judging the manifest weight because it's just a piece of paper to both of you. You may say you're not advocating the noble. That's exactly what you're advocating. Well, if you look at the decision of the arbitrator, there are a lot of things that are in the depositions that the arbitrator did not take note of in the decision, and those are in front of you is what I'm saying in determining if there's manifest weight, and there's nothing more that the arbitrator had that you don't have in making that determination. What's wrong with Payne's opinion that there was a causal connection? Tell me what's wrong. Well, Dr. Payne was asked questions about causal connection, and he said, is this consistent with the problems that were presented to you? And he said, it's consistent with the symptomatology for causing the symptomatology. Not the condition itself, but causing the symptomatology. If I take a pencil and press it against my leg, that may cause symptomatology. It wouldn't mean that I broke my leg because of that pencil. But we know that picking up this 10-pound log and throwing it caused symptomatology. We don't know that it caused a true aggravation of the spondylolisthesis. And so he was asked, well, what's the basis for that? And he said, well, conceptually, or conjecture, basically he said, looking for the exact quotation, where he said that he conceptualized it, that this man had a small herniated disc that pressed upon a nerve, and that it didn't get better. And then on cross-examination, I asked him to take a look at his operative report, and he had to admit there was no small herniated disc. There was no disc pressing upon a nerve. It just, there just wasn't. But he said something happened. That's his opinion. Something happened. His opinion was that the twisting motion compressed the nerve, which irritated the L5 nerve root. And he testified something occurred when the claimant twisted and lifted and caused his symptoms. His nerve was irritated and could not recover. That was his testimony. And then on cross-examination, I asked him questions about the 10-pound log. He goes, well, my firewood is larger than that. And no, that kind of a lift is not something which should be aggravating the spondylolisthesis. All right, so you start off by saying this is a battle of the experts, isn't it? Yes, it is. But it was. So let's look at the experts. Well, it wasn't lifting alone. It was twisting. That was part of it. Any time you were twisting in the lumbar spine, we know that the orientation of the fibers of the outer layers of the disc are oblique, and they kind of cross each other. And twisting puts them kind of at their weakest point. It's twisting, not just lifting. And then you add to that his testimony that there was a small herniated disc. It's that weakness in the disc causing a herniated disc. The weakness in the disc doesn't do anything to the spondylolisthesis itself. So his twisting of the disc is for that herniated disc that doesn't exist. Who was the treating physician in this case? The treating physician in this case was Dr. Payne. And Dr. Payne, as noted by opposing counsel, this is a battle of the experts, Dr. Payne didn't testify to having any great expertise in regard to spondylolisthesis. But he has been practicing at the time of this surgery about 10 years as a spinal surgeon. Okay, but he's also the claimant's treating physician, and he's very familiar with the background and the medical history of the claimant. So doesn't that give him sort of a good position to be able to give a good plausible connection to him? It gives him the sufficient information to give that had he actually interpreted it correctly. But again, he thought there was a herniated disc. So he had all the information, but he was wrong. And this is a weird case where a fellow has all the information, he's been given the history, he's seen the fellow, he's treated him, he did surgery on him, and after he had to admit that there was no herniated disc and there was no infection on the nerve. What does whether he had a herniated disc or he didn't have a herniated disc? Before he operated on him, he thought the man had a herniated disc. After he operated on him, he admits that he found no herniated disc when he performed the surgery. Okay, but he never retreated from his opinion that the twisting caused an irritation of the nerve that never recovered. I mean, he testified to that. Commission chose to believe him. That's, you are correct, Justice Hoffman, you are correct, they did. But again, it's a battle of the experts. He has no great expertise. Compare that, since they were the ones who used the phrase battle of the experts, compare that to Dr. DeGrange. Dr. DeGrange testified that he's treated thousands of people, and he's performed perhaps 100 surgeries such as this for spondylolisthesis. And he's given over 100 talks or presentations on the subject of spondylolisthesis. I think we could probably find that he was an expert. Whereas there's no testimony that this is the first or the 10th or the 100th by Dr. Payne. There's no testimony that he knows anything other than what generally any surgeon would know about spondylolisthesis. He did explain to a certain degree how spondylolisthesis occurs. Dr. DeGrange explained it in greater detail, but they're basically in agreement in how spondylolisthesis occurs. Dr. DeGrange, however, testified that lifting and throwing a 10-pound weight such as this limb is not sufficient to aggravate spondylolisthesis to the point where it needs surgery. Even Dr. Payne testified that lifting this branch is not what you would expect to be able to aggravate spondylolisthesis. Let me ask you a pointed question. How do we adopt your argument without doing violence to the very well-settled principle that we are not supposed to substitute our judgment for that of the commission on medical evidence and testimony? You seem to be pointing out why you think the testimony of DeGrange is superior to Payne, but is that our job? Can we announce we find, by the way, that DeGrange is superior to Payne so we reverse the commission? Can we do that? Well, no, I don't think you can do it as you stated it. But, if you look at the arbitrator's decision, which was just adopted without comment by the majority in the commission. Which they do in 80% of their cases, so there's nothing new about that. No, but they don't do it as often when there's a dissent, such as the one written by Commissioner Cappelletti. She wrote a very detailed dissent explaining why there was error. And what she concludes in her dissent are the things that are not included in the arbitrator's decision. The arbitrator never mentions this erroneous belief of the surgeon that there was this herniated disc and that it pinched upon nerve. No, he just ignored that, he ignored that, he ignored the opinion of the doctor. Wasn't this man asymptomatic before the twisting event? He said with the exception of minor things, yes. He was asymptomatic. DeGrange argues that a person responding to the thesis can be asymptomatic. He admits that there's a temporal relationship between the onset of radicular complaints and the symptoms and the work accident. Nevertheless, he doesn't think there's a causal connection. Now, if the arbitrator could have run and say, that doesn't make sense. That is the arbitrator's job, actually, is to make that determination, whether it does or does not make sense. I have no problem with that. But the arbitrator totally omitted, as if he didn't notice it. I can't say he didn't, that Dr. Payne said that lifting this should not aggravate spondylolisthesis. Don't leave out twisting. It's not just lifting. That's not what Payne said. Payne said lifting and twisting. And it's twisting that he said irritated the nerve that never recovered. Well, I believe he said that twisting caused the disc to become at its most vulnerable. I believe he used the correct phrase. Only we know that there was no disc problem. That's what he said, if I remember correctly. Something occurred when the claimant twisted and lifted that caused his symptoms. His nerve was irritated. That's correct. He said something. He doesn't know what did. Something occurred. Well, if something aggravated the preexisting condition, what is the problem with that? Why can't recovery be based on that? Well, as Dr. DeGrange pointed out, this man's spondylolisthesis, it's a progressive disease. And it had progressed so far that anything would have made him, could have made him symptomatic. In fact, this man testified that that morning he had been throwing, picking up, and twisting, and throwing much larger limbs. His job caused him, requires him to lift up to 100 pounds. And he said he was lifting much larger and throwing them earlier in the day. They didn't cause it. Okay. Does that mean he can't recover for the one that did? And Dr. DeGrange's testimony, which is consistent with the first medical provider who saw him, is that what he did that morning caused a lumbar strain. And that he, that resolved. But he had an underlying problem, and, which could not be made symptomatic to the point of needing surgery by this particular action. According to who? According to Dr. DeGrange. Right. And the commission believed the other doctor over DeGrange. That is true. So we're back. We've gone full circle here. Our second point is that we believe that under Kornfeld Energy, this case should be sent back for more specific findings in regards to. You know, I wrote a brief on this. And I looked at this arbitrator's decision. This arbitrator discussed each of the four factors that were relevant in this case that were required by the statute. And indicated what weight the arbitrator placed on each of the factors. Could you explain that? I won't. I do not ask questions. Plaintiff's occupation supports the claim of permanency. Significant weight is placed on his age at the time of the injury. Very little weight is placed on the claimant's future earning capacity. And significant weight is placed upon the evidence of disability as cooperated by his medical treatment records. What's wrong with that? Well, he uses the words, you know, weight is given. But is it mitigating or aggregating, for one thing? I mean, for instance, on future earning capacity, he gives a very little weight. He had to admit, this man is making as much if not more money now than he was at the time of the accident. Therefore, I'm giving it no weight. Well, he gave the weight. He complied with the statute. You just don't like the fact that they awarded 30%. That's a different issue. You combined the legal issue and the factual issue as if it was a single issue. And it wasn't. So from the legal standpoint, the arbitrator complied with 8.1B. Now, factually, you don't like the fact that he came up with 30% of the loss and the commission affirmed it. But nature and extent is a factual issue for the commission, not for us. You just don't like that he came up with 30%. What would you rather have him come up with, 15%, 10%? I did not brief a percentage. I said it should be sent back because I think that I agree with your standard approach, which is the arbitrator and commissioner are in a best position to determine the severity of the injury. That is our standard approach, but that's also consistent with the law. Yes, it is. You'll have time in reply. Thank you. Thank you. Counsel may respond. Mr. O'Brien, my name is Tim Shea. I'm here on behalf of the petitioner. Are you going to say anything other than CISPRO? I'll answer any question you want me to answer. I mean, that's what you're going to argue, right? The basis laid it. We accept our petitioner. We find our petitioner. Our petitioner had a spondylolisthesis. There is a difference of opinion between the Section 12 position to Grange. He claimed it. On the one hand, he said it's so bad anything could have made him symptomatic, but yet he said it's a grade one. Payne said it was a grade two. You had mentioned some questions or discussed the issue of twisting, and I pulled up the last thing that Payne said in the redirect, and he said, anytime you are twisting in the lumbar spine, we know that the orientation of the fibers of the outer layers of the discs are oblique, and they kind of cross each other, and twisting puts them at their weakest point. That's always where you're worried about. There's always where I worry about twisting injuries in the lumbar spine. He's already got pyramidal stenosis there. If this twisting motion is compressing the nerve dynamically as he twists, that could certainly irritate the L5 nerve. Whether or not he has the presence of a herniated disc is a red herring. The fact of the matter is there is an action arising out of it in the course of his employment, twisting, that compresses the L5 nerve, that sparks a ridiculous symptomatology that he never had before. Everybody agrees with this. He had a condition that he likely developed when he was a younger person. Even Payne says 80% of the people that come in his office don't even realize they have it. They're surprised. Both physicians say you can be asymptomatic. Now, the difficulty I have with what Payne says is Payne says, as you indicated earlier, Justice Hoffman, there is a temporal relationship. De Grange, you mean, not Payne. De Grange. I'm sorry, De Grange. There is a temporal relationship. For the first time, he has an automatic sense of pain to his lower back. But if it was simply a lumbar sprain strain that was temporary in nature, why are there ridiculous symptoms that follow immediately thereafter? They start with going down the left buttock, and within days, they go to the thigh. So we have an electrical impulse that would be consistent with the L5 nerve due to the twisting nature of the injury itself. And there is no explanation by Dr. De Grange as to why this is possibly only a sprain strain that doesn't resolve itself in the temporary nature that returns him to his pre-accident status. And that is the most damning piece of evidence that Dr. De Grange has, a lack of any reasonable explanation as to why a temporal relationship doesn't carry the day. That's his problem. And Payne provides, who saw him on many occasions, provides that explanation. So we have the challenge of the experts, and Dr. Payne is a board-certified orthopedic spine surgeon. Oh, by the way, what Mr. O'Brien left out is Dr. De Grange is a well-traveled Section 12, and in Missouri, also an IME physician, who earns approximately $200,000 a year. So he's going to give the argument that Mr. O'Brien is seeking but cannot provide a plausible explanation. So are you saying that in so many words, that obviously, if the arbitrator and the commission found Payne's causal connection opinion to be sufficient, then there would, in essence, be sufficient evidence in the record to support the decision? Absolutely. Is that what this comes down to? That's what it is. And that's your position? It's my position. It's a manifest weight of the evidence. And I'll just talk quickly about 8.1b. He's trying to make a legal argument where none exists. He's also trying to indicate that the body of the decision by the arbitrator and the commission, you have to use words such as mitigating or aggravating factors. And there's nothing in the statute that says that. You have to provide an explanation. And that's exactly what the arbitrator did and what the commission confirmed. Now, the most important part, and I know we're not really talking about 30%, but one thing he mentioned in his brief that he didn't discuss with you, probably because of lack of time, is that my client ultimately had a pseudoarthrosis. And even Dr. DeGrange said that the symptomatology that he presented during the Section 12 examination was consistent with somebody who had a pseudoarthrosis. Ultimately, the pseudoarthrosis was confirmed by the CT scan. And DeGrange, even DeGrange said, if the pathology is not cured or remedied, which would require a new fusion, then he is going to have this ongoing symptomatology for the remainder of his life, which is the pain that he has in his back and the difficulty that he has when walking and doing other factors. That is the ultimate point why the commission awarded 30% and why there is an objective means to support the subjective complaints of my client. If you have any further questions, I'll answer them. Otherwise, I'll sit down. Thank you. I don't believe there are. Thank you, counsel. Thank you, counsel, both of them, for your arguments in this matter. We take them under advisement.